# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| JUAN GONZALEZ, )<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>FAITHFUL+GOULD, INC., )<br>    Defendant. )<br>) | Case No. 1:17cv624 |

## MEMORANDUM OPINION

At issue in this Americans with Disabilities Act[1] case is the defendant's motion for summary judgment. Plaintiff alleges that defendant, Faithful + Gould, Inc., terminated plaintiff because of his disability and failed to provide plaintiff with a reasonable accommodation for his disability. Defendant seeks summary judgment, arguing: (i) that the plaintiff cannot establish a prima facie case with respect to his disability discrimination claim; (ii) that plaintiff has failed to present evidence demonstrating that defendant's legitimate, non-discriminatory reason for terminating plaintiff, namely that plaintiff had engaged in misconduct by disrobing at work, was pretextual; and (iii) that plaintiff's failure to accommodate claim fails because plaintiff's request for an accommodation came only after a decision had been made to terminate plaintiff for misconduct.

The matter has been fully briefed and argued, and is now ripe for disposition.

---

[1] 42 U.S.C. § 12101.

1

**I.**[2]

In August 2015, defendant, Faithful+Gould, hired plaintiff, Juan Gonzalez, as an Invoice Validation Specialist on a contract with the Transportation Security Administration (TSA). Timothy Hannaway (Hannaway), a managing director at defendant, interviewed and hired plaintiff for the position. In the Invoice Validation position, plaintiff was required to process, validate, and reconcile airport invoices and prepare financial reports related to the TSA contract. On plaintiff's first day at work, he did not disclose his disability to defendant, though he had the opportunity to do so on one of his employment forms. In fact, plaintiff did not disclose his disability to defendant until the day he was terminated.

Plaintiff was supervised by Henry Edquist and Hannaway while working at defendant. Plaintiff struggled to adjust to the new job and his work product was inadequate. Edquist expressed concerns about plaintiff's work to Hannaway. Hannaway met with plaintiff on multiple occasions to discuss plaintiff's work-product deficiencies and other performance issues, but plaintiff did not show improvement. As a result, on October 2, 2015 Hannaway decided he needed to look for a replacement for plaintiff. Accordingly, Hannaway told Tracy Nursey, defendant's Senior Human Resources Manager, that he would be advertising plaintiff's position and that it was necessary to begin soliciting applications for plaintiff's replacement. By October 6, 2015, Hannaway and Edquist had begun receiving and reviewing resumes from candidates who would replace plaintiff.

---

[2] The facts described herein are derived from the defendant's statement of undisputed facts, most of which the plaintiff does not specifically dispute. The defendant's statement of undisputed facts was submitted in accordance with Local Rule 56(B), which requires that a motion for summary judgment contain a separately captioned section listing in numbered-paragraph form all material facts as to which the movant contends no genuine dispute exists. Plaintiff as the non-movant responded to each numbered-paragraph, either admitting or denying the contents of the paragraph. Where plaintiff did note a dispute, the dispute was either immaterial or not supported by admissible record evidence.

On October 7, 2015, plaintiff reported to work as usual and sat at a work table in the open office area next to Jack Kestner, defendant's Director of Finance. Kestner was on a conference call with defendant's CFO when he saw plaintiff taking off his clothes at the seat next to him. Plaintiff walked away from his desk, then returned to his seat next to Kestner and took off his socks and shoes. Plaintiff then stood up and unbuttoned his pants. When Kestner asked plaintiff if he was okay, plaintiff answered "yes." After that, plaintiff took off his pants and his shirt and placed them on his desk and stood in the open office area clad only in his underwear.

While plaintiff was taking off his clothes, Kestner alerted Laura Rullan, Office Supervisor, about the incident. Rullan saw that plaintiff was not wearing pants, got up from her desk, and took a post-it note to Nursey alerting her that there was an urgent matter concerning the plaintiff. Nursey left her telephone call and went to the main office area to speak with plaintiff. By the time Nursey arrived, plaintiff had put on his shirt and pants. Nursey asked plaintiff if they could speak in her office and plaintiff followed her there. Once in Nursey's office, Nursey asked plaintiff if he had undressed. Plaintiff responded that he was changing after taking the Metro to work. At that point, Nursey believed plaintiff meant he had just been changing his shoes, and Nursey told plaintiff that he should change his shoes in the bathroom.

Later in the day, Nursey spoke with Kestner and Rullan, who informed her that plaintiff had removed all of his clothes except his underwear. At that point, Nursey attempted to contact Hannaway. When she was unable to reach Hannaway, Nursey consulted with her supervisor, Jeanette Rodriguez, and the company's Human Relations manager, Joy Lee. All three agreed that termination was the appropriate discipline based on the misconduct, but they agreed they needed to consult Hannaway before reaching a final decision.

At 5:30 p.m., Nursey was able to reach Hannaway by telephone. Nursey described the incident to Hannaway, and Hannaway told Nursey that he had already planned to terminate plaintiff. Hannaway and Nursey agreed to have a termination meeting with plaintiff as soon as he arrived at work the following morning. At the time Hannaway made the decision to terminate plaintiff, he had no knowledge that plaintiff suffered from epilepsy or that he had experienced a seizure.

On the morning of October 8, 2015, plaintiff approached Nursey in her office and told her that he believed he may have suffered a seizure the day before. Nursey told plaintiff that she knew plaintiff had taken his clothes off in the office. Plaintiff asked Nursey for the names of the people who had seen him take off his clothes and Nursey declined. At that point, plaintiff went to the garage to wait for Hannaway. When Hannaway arrived, plaintiff tried to speak with Hannaway in the parking garage, but Hannaway indicated he wanted to go upstairs and speak with plaintiff in the office.

After returning to the office, Nursey and Hannaway discussed plaintiff's claim that plaintiff believed he had a seizure. Nursey and Hannaway agreed that they should meet with plaintiff to inform him that he would be terminated. Thereafter, plaintiff, Nursey, and Hannaway met in a conference room to discuss the incident. Plaintiff called Nursey a liar, and Hannaway asked plaintiff to calm down. Hannaway then reviewed the incident with plaintiff and told plaintiff that he had decided the previous day to terminate plaintiff for this incident. Plaintiff repeated his claim that he had suffered a seizure.[3] Hannaway instructed plaintiff that he should

---

[3] Plaintiff claims that his epileptic seizure caused plaintiff to remove his clothes, and that plaintiff had done so on at least one previous occasion. For purposes of this motion, the defendant does not dispute that plaintiff's disrobing was the result of a seizure, and thus, the analysis here proceeds on the assumption that plaintiff's disrobing was caused by his seizure.

take the remainder of the day as leave with pay while defendant considered plaintiff's claim that he had suffered an epileptic seizure.

After plaintiff left, Nursey called the Job Accommodation Network ("JAN"), a hotline at the Department of Labor that gives advice on handling situations where an employee's disability leads to the violation of a conduct rule. JAN provided written guidance to defendant, telling defendant that an employee may be terminated for violation of a conduct standard that is job-related and consistent with business necessity, and where all employees were held to the same standard.

After receiving advice from JAN, Hanaway finalized his decision to terminate plaintiff. Hannaway and Nursey called plaintiff at 6:00 p.m. on October 8, 2015 to confirm that his employment was terminated. Hannaway told plaintiff he was being fired for taking off his clothes in the workplace.

## II.

### A.

Plaintiff contends that his termination violated the ADA's prohibition against intentional disability discrimination. This claim is governed by well-settled principles. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge[.]" 42 U.S.C. § 12112(a). To survive summary judgment, plaintiff must show (1) that he "was a qualified individual with a disability," (2) that he suffered an adverse employment action, (3) that he was satisfying his employer's legitimate expectations at the time of the adverse action, and (4) that the circumstances surrounding the adverse action "raise a reasonable inference of unlawful discrimination." *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012). Furthermore, the ADA requires a plaintiff show that his disability

5

was the but-for cause of his termination. *Gentry v. East West Partners Club Management Co. Inc.*, 816 F.3d 228, 235 (4th Cir. 2016).

A review of the summary judgment record makes unmistakably clear that plaintiff's ADA claim fails on requirements three and four, as well as the "but for" causation requirement. Thus, on this record, plaintiff cannot show that he was meeting his employer's legitimate expectations at the time of his termination or that the circumstances surrounding plaintiff's termination raise a reasonable inference of unlawful discrimination.

The undisputed record evidence shows that plaintiff's work performance failed to meet his employer's legitimate expectations at the time he was terminated. Thus, even before plaintiff had removed his clothes in the workplace, his job performance had been unsatisfactory and the record shows that the defendant had made preparations to remove plaintiff from his position as a result of job performance deficiencies. Moreover, at the time plaintiff was terminated, he had violated a reasonable work conduct standard that applied to all employees requiring employees to act professionally in the workplace. Plaintiff's contention that keeping his clothes on at work is not a reasonable business necessity is plainly unpersuasive. Although plaintiff may claim that taking off his clothes at work was a consequence of his seizure, that does not relieve him of the need to meet this reasonable workplace standard. Thus, at the time of his termination plaintiff was far from meeting his employer's legitimate workplace expectations.

Plaintiff's claim also fails because the undisputed factual record shows that he cannot establish the requisite causation between his disability and termination, namely that his disability was the "but-for" cause of his termination. *See Gentry*, 816 F.3d at 235. To begin with, defendant, including the person who made the decision to terminate plaintiff, did not know about plaintiff's disability at the time Hannaway made the decision to terminate plaintiff. Plaintiff had

not disclosed his disability, and his disability was not obvious. Plaintiff's disability, epilepsy, is not manifest to those around plaintiff, and so the lack of knowledge on the part of defendant is significant. Further, defendant had made a decision to terminate plaintiff *before* defendant was aware of plaintiff's disability. It is undisputed that Hannaway had decided to terminate plaintiff on the evening of October 7, 2015 and that plaintiff's termination meeting was scheduled for the next morning.[4] Hannaway decided to terminate plaintiff because plaintiff had taken off his clothes at work, not because plaintiff suffered from a disability. The plaintiff does not dispute that he did not inform Hannaway or anyone else at work that he suffered from seizures until his termination meeting on October 8, 2015. Plaintiff's disability could not be the required but-for cause of his termination because the decision to terminate was made prior to his disclosing his disability.

Furthermore, plaintiff does not dispute that he was terminated based on his misconduct. Plaintiff argues that his misconduct was the result of his disability, but the Fourth Circuit has consistently held that employers are free to discharge disabled persons for misconduct, even if the misconduct was related to or caused by the disability. *See Little v. F.B.I.*, 1 F.3d 255 (4th Cir. 1993) (finding no discrimination where plaintiff was terminated because of intoxication at

---

[4] Plaintiff argues that Hannaway had not made a decision to terminate plaintiff on the evening of October 7th, but instead decided to terminate plaintiff after plaintiff disclosed his epilepsy. The only evidence plaintiff presents to support this claim is a statement by Nursey on the morning of October 8th that Hannaway "is leaning towards termination." Pl. Ex. 4. Importantly, other undisputed record facts clearly establish that the decision was made on the evening of October 7. Hannaway stated at his deposition that on a phone call with Nursey he "let her know that [he] would terminate Juan" and that they began "planning how we would do that the next morning[.]" Hannaway Dep. 85:17-21. Later, in response to a question asking whether he was leaning towards terminating plaintiff or was certain that he wanted to terminate plaintiff, Hannaway said "I was certain on the phone call that I would terminate Juan the next day." *Id.* at 92:5-6. Regardless of the message by Nursey, it is clear the Hannaway had decided to terminate plaintiff on the evening of October 7, 2015. Plaintiff's own declaration states that he was told at the termination meeting that "Hannaway had already decided to terminate me." P. Decl. at 2. Thus, the undisputed record evidence shows that the decision to terminate plaintiff had been made before plaintiff disclosed his seizure to Nursey, and there is no evidence that he was terminated *because of* the seizure.

work, not because of his alcoholism).[5] Thus plaintiff cannot establish a prima facie case with respect to the causation element of his ADA claim, and no reasonable jury could find that plaintiff's disability was the basis of his termination.

Citing *Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 686 (4th Cir. 1997), plaintiff argues that firing him because of behavior that resulted from his seizure is *per se* a termination on the basis of his disability. Plaintiff's reliance on *Martinson* is misplaced; indeed, far from supporting plaintiff's position that decision squarely confirms that in a case similar to plaintiff's summary judgment is warranted. There, the defendant's stated reason for terminating plaintiff was that he suffered from seizures. Defendant in *Martinson* was aware of plaintiff's disability and terminated plaintiff because of it. Here, by contrast, it is undisputed that defendant was unaware that plaintiff suffered from epilepsy or seizures and that plaintiff was terminated because of his misconduct, not because he suffered seizures. At the time defendant decided to terminate plaintiff, defendant was not aware of any disability and thus plaintiff cannot establish that defendant terminated plaintiff *because of* his disability. This case also differs from *Martinson* in that plaintiff here was terminated for misconduct, not an inability to perform his job. The Fourth Circuit in *Martinson* stated that "misconduct – even misconduct related to a disability – is not itself a disability, and an employer is free to fire an employee on that basis." *Id.* at 686 n.3. Plaintiff was terminated because his disability led him to violate company policy by taking off his clothes. Thus, the *Martinson* case is inapposite and does not preclude a finding that plaintiff cannot establish a prima facie case with respect to causation.

---

[5] *See also Jones v. Am. Postal Workers Union*, 192 F.3d 417, 429 (4th Cir. 1999) ("The law is well settled that the ADA is not violated when an employer discharges an individual based upon the employee's misconduct . . . the ADA does not require an employer to ignore such egregious misconduct by one of its employees."); *Shiflett v. GE Fanuc Automation Corp.*, 151 F.3d 1030 (4th Cir. 1998) (unpublished) (finding no disability discrimination where plaintiff was terminated because a loud confrontation even though the cause was plaintiff's deafness); *Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 686 (4th Cir. 1997) (acknowledging that if a seizure led to misconduct and plaintiff was terminated for misconduct, the plaintiff would fail to establish causation for a discrimination claim).

Even assuming *arguendo*, that plaintiff could establish his prima facie case for disability discrimination, his claim would still fail because he has not presented any evidence to show that defendant's legitimate non-discriminatory reason for his termination was pretextual. Defendant's proffered legitimate non-discriminatory reason for terminating plaintiff is that plaintiff took his clothes off at work in violation of the workplace code of conduct. Violation of company policy is a legitimate non-discriminatory reason for termination. *See Vannoy v. Federal Reserve Bank of Richmond*, 827 F.3d 296, 304-05 (4th Cir. 2016) ("[t]he FMLA does not prevent an employer from terminating an employee for poor performance, misconduct, or insubordinate behavior."). Plaintiff conceded at deposition that he believed he was terminated for taking his clothes off at work and not because of his disability. When asked "Do you contend that the reason Faithful + Gould told you that you were fired is false?" plaintiff responded "no." Gonzalez Dep. at 331:10-13.

Plaintiff fails to point to any record evidence establishing that defendant's reason for the termination was pretextual. Nor can plaintiff cannot point to any similarly situated employee who had remover his or her clothes off at work and was not terminated, and plaintiff conceded at his deposition that defendant would have terminated any employee who took their clothes off at work:

> Q: Do you dispute that other employees at Faithful + Gould, if they took their clothes off at work, would be held to the same standard as you were?
> A: Yes, probably I would think Faithful +Gould would do that
> Q: Would fire other employees for taking their clothes off?
> A: Right.

Gonzelez Dep. at 327:11-19

Plaintiff's assertion that he should have been relieved from the need to comply with company policy because of his disability is not supported by the ADA. Plaintiff cannot establish

9

pretext merely by asserting that he should have been treated better or should not have been terminated for violating policy. *See Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 722 (4th Cir. 2013). Plaintiff's argument that his misconduct should be excused because he suffers from a disability and his conclusory allegations that the decision to terminate him was discriminatory do not establish a genuine dispute of material fact as to pretext,[6] and summary judgment in favor of defendant must be granted.

**B.**

Plaintiff also claims that defendant violated the ADA by failing to provide plaintiff with a reasonable accommodation for his seizures. To establish a prima facie case for failure to accommodate, a plaintiff must show: "(1) that [he] was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [his] disability; (3) that with reasonable accommodation [he] could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (brackets and ellipses omitted).

It is undisputed that defendant did not have notice of plaintiff's disability until October 8, 2015, when plaintiff, for the first time, disclosed his epilepsy at his termination meeting. Notably, defendant by that time had already made a decision to terminate plaintiff, and it was under no obligation to offer plaintiff a reasonable accommodation after making a decision to terminate him and after plaintiff had already engaged in terminable misconduct. The Fourth Circuit has held under similar circumstances that a request for an accommodation made after misconduct is insufficient to sustain a failure to accommodate claim. *See Halpern v. Wake*

---

[6] *See Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296, 305 (4th Cir. 2016) (citation omitted) ("[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate non-discriminatory reasons for discharge.").

*Forest Univ. Health Scis.*, 669 F.3d 454, 465 (4th Cir. 2012).[7] In *Halpern*, the plaintiff was a medical student who had acted unprofessionally on multiple previous occasions, allegedly because of his disability. After the decision had been made to terminate plaintiff he requested a "special remediation plan" to assist him with dealing with his disability. *Id.* The Fourth Circuit held that this request could not support a failure to accommodate claim because the request for accommodation came after a decision had been made to expel plaintiff. Other circuits to consider the issue have agreed that a request for accommodation made after terminable conduct occurs does not trigger an employer's duty to accommodate, even if the plaintiff's terminable misconduct resulted from his or her disability.[8] Thus, plaintiff's failure to accommodate claim fails because the ADA does not require employers to accommodate a disability the employer is unaware of until after an employer has made a decision to terminate an individual.[9] As such, summary judgment in favor of defendant on plaintiff's failure to accommodate claim must be granted.

---

[7] *See also Martinson,* 104 F.3d at 686 ("misconduct – even misconduct related to a disability – is not itself a disability, and an employer is free to fire an employee on that basis.").

[8] *See, e.g.*, *Davila v. Qwest Corp.*, 113 Fed. App'x. 849, 854 (10th Cir. 2004) ("[E]xcusing workplace misconduct to provide a fresh start/second chance to an employee whose disability could be offered as an after-the-fact excuse is not a required accommodation under the ADA."); *Hill v. Kansas City Area Transportation Auth.*, 181 F.3d 891 (8th Cir. 1999) (affirming against plaintiff on her ADA claim "because she did not disclose her need for accommodation until after she had committed workplace offenses that she knew mandated her discharge."); *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 90 (1st Cir. 2012) (affirming summary judgment against plaintiff on his ADA claim in part because he did not put his employer on notice that he was disabled or required accommodation until he knew his employment was being terminated.); *Parsons v. Auto Club Group*, 595 Fed. App'x. 446, 449 (6th Cir. 2014) (affirming summary judgment on plaintiff's ADA claim because he made no request for accommodation until he met with his supervisor and an investigator to defend allegations of misconduct.")

[9] *See Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 465 (4th Cir. 2012) (holding that the ADA does not require an employer to make accommodations for an employee the employer has already decided to terminate for misconduct); *Little v. F.B.I.*, 1 F.3d 255 (4th Cir. 1993) (same). *See also supra* note 7.

## III.

In sum, the undisputed factual record reflects that plaintiff cannot establish a prima facie case of disability discrimination, and that even if plaintiff were able to make a prima facie showing of disability discrimination plaintiff's claim would still fail because he has failed to establish that the reason given for his termination – his disrobing at work – was pretextual. Furthermore, plaintiff's failure to accommodate claim fails because plaintiff did not disclose that he suffered from a disability until his termination meeting. The ADA does not require an employer to accommodate a plaintiff's disability when that disability is disclosed after the employer has decided to terminate the plaintiff for misconduct. Accordingly, plaintiff's failure to accommodate claim fails. Because plaintiff has not presented record evidence sustaining either of his ADA claims, an order will issue granting summary judgment in favor of defendant.

The Clerk is directed to provide a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
December 22, 2017

/s/
T. S. Ellis, III
United States District Judge